UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| PATRICIA REYES-PINEDO<br>1550 Cameron Crescent Drive<br>Apt. 2-B<br>Reston, VA 20190<br><br>       Plaintiff,<br><br>v.<br><br>LEON RODRIGUEZ, Director<br>U.S. Citizenship and Immigration Services<br>20 Massachusetts Avenue, N.W.<br>Washington, DC  20529<br><br>JEH CHARLES JOHNSON, Secretary<br>U.S. Department of Homeland Security<br>3801 Nebraska Ave., NW<br>Washington, DC 20016<br><br>RON ROSENBERG, Chief<br>U.S. Citizenship and Immigration Services<br>Administrative Appeals Office<br>20 Massachusetts Ave., NW<br>Washington, D.C.  20529<br><br>LAURA B. ZUCHOWSKI, Director<br>U.S. Citizenship and Immigration Services<br>Vermont Service Center<br>75 Lower Welden Street<br>St. Albans, VT 05479<br><br>       Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civ. No.<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

_____

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff, PATRICIA REYES-PINEDO ("Ms. Reyes"), through undersigned counsel,

complains of the Defendants, LEON RODRIGUEZ, Director, U.S. Citizenship and Immigration

Services; JEH CHARLES JOHNSON, Secretary, U.S. Department of Homeland Security; RON

ROSENBERG, Chief of the U.S. Citizenship and Immigration Services Administrative Appeals

1

Office; and LAURA B. ZUCHOWSKI, Director of the U.S. Citizenship and Immigration

Services Vermont Service Center, as follows:

## I. <u>PREFATORY STATEMENT</u>

1.      This is an action brought pursuant to Section 10b of the Administrative Procedure

Act, 5 U.S.C. § 702 and 28 U.S.C. § 1331, seeking review of a decision by Defendant U.S.

Citizenship and Immigration Services ("USCIS") denying Ms. Reyes's Form I-918 Supplement

A Petition for Qualifying Family Member of a U-1 Recipient ("Derivative U Petition"), which

sought to grant temporary derivative nonimmigrant status ("U-3 status") to Ms. Reyes's

daughter, Geraldine Aquino Reyes, a resident of Peru, pursuant to Section 101(a)(15)(U)(ii) of

the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101(a)(15)(U)(ii). The decision of

Defendant USCIS denying Ms. Reyes's Derivative U Petition is arbitrary, capricious, an abuse of

discretion, and contrary to law.  Consequently, Ms. Reyes seeks an order remanding the case to

the agency with instructions to equitably toll the deadline for Ms. Reyes's daughter's Derivative

U Petition denial.

2.      Ms. Reyes suffered domestic violence in the United States. She cooperated with

law enforcement in their investigation and prosecution of the perpetrator. On account of her

helpfulness towards law enforcement, Defendant USCIS granted Ms. Reyes U-1 nonimmigrant

status. However, Defendant USCIS denied Ms. Reyes's Derivative U Petition for her daughter,

Geraldine, because Geraldine turned 21 on the very day Defendant USCIS received the

Derivative U Petition, which meant that Geraldine was no longer a "child" within the meaning of

the immigration laws and could thus no longer qualify for U-3 status. Ms. Reyes timely filed

Form I-290B, Notice of Appeal or Motion, with the Administrative Appeals Office ("AAO").

Ms. Reyes argued that USCIS should equitably toll the deadline for filing the Derivative U

Petition because clear ineffective assistance of counsel prevented Ms. Reyes from filing earlier.

The AAO acknowledged that ineffective assistance of counsel prevented Ms. Reyes from filing

earlier but, without analysis, declined to equitably toll the filing deadline by a single day.

3.      The USCIS decision is arbitrary, capricious, an abuse of discretion, and contrary

to law because (1) it incorrectly concluded that, notwithstanding undisputed ineffective

assistance of counsel, equitable tolling was unavailable for Ms. Reyes's daughter's Derivative U

Petition, which was filed with Defendant USCIS on the day Ms. Reyes's daughter turned 21

years old, and (2) USCIS failed to provide a reasonable explanation for denying Ms. Reyes's

Derivative U Petition and failed to cite relevant authority for its decision.

4.      The agency's action has caused – and will continue to cause – irreparable harm to

Ms. Reyes and her daughter, who remain separated due to Defendants' erroneous denial of Ms.

Reyes's Derivative U Petition. Ms. Reyes's daughter resides in Peru. Unless Ms. Reyes's

Derivative U Petition is approved, Ms. Reyes and her daughter will be forced to live apart for

likely the next decade.

## II. JURISDICTION

5.      This is a civil action brought pursuant to 5 U.S.C. § 701 *et seq*., the

Administrative Procedure Act ("APA"), and 28 U.S.C. § 1331 (federal subject matter

jurisdiction), as well as 8 U.S.C. § 1101 *et seq.,* the INA.  Original jurisdiction is vested in this

Court by 8 U.S.C. § 1329 (jurisdiction of the district courts), 28 U.S.C. § 1346(a)(2) (civil

actions against the United States), and 28 U.S.C. § 2201 (declaratory relief), to redress the

deprivation of rights, privileges, and immunities secured to Ms. Reyes.

A.      **Subject Matter Jurisdiction**

6.      Under the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of the relevant statute, is entitled to judicial review thereof."  5 U.S.C. § 702.  The APA provides further that "final agency action for which there is no other adequate remedy in a court [is] subject to judicial review."  5 U.S.C. § 704.  The APA defines "agency action" to include "the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13).  Agency action includes the denial of a Petition for Qualifying Family Member of a U-1 Recipient (Form I-918 Supplement A) filed pursuant to 8 U.S.C. § 1101(a)(15)(U)(ii)(b) and 8 C.F.R. § 214.14(f).  This action by USCIS is reviewable because it is inconsistent with the agency's own legal standards and settled practice.  *See, e.g., Heckler v. Chaney*, 470 U.S. 821, 833 (1985) (holding that administrative agencies are not "free to disregard legislative direction in the statutory scheme that the agency administers"); *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 414 (1971) ("In all cases agency action must be set aside if the action was 'arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law' or if the action failed to meet statutory, procedural, or constitutional requirements.").  The standards to be applied on review are governed by 5 U.S.C. § 706. *Heckler*, 470 U.S. at 828.

7.      The APA does not independently provide a basis for subject matter jurisdiction. *Califano v. Sanders*, 430 U.S. 99, 107 (1977).  However, the Federal Question Statute, 28 U.S.C. § 1331, confers jurisdiction over a suit that arises under a right of action created by the APA. *See Bowen v. Massachusetts*, 487 U.S. 879, 891 n.16 (1988) ("[I]t is common ground that if

review is proper under the APA, the District Court ha[s] jurisdiction under 28 U.S.C. § 1331.");

*see also Lee v. U.S. Citizenship and Immigration Services*, 592 F.3d 612, 618-19 (4th Cir. 2010)

("[T]he jurisdictional source for an action under the APA is the "federal question" statute….").

8.      Under the APA, federal courts review administrative actions to determine whether

the agency acted arbitrarily or capriciously or abused its discretion.  *FCC v. Fox Television*

*Stations, Inc.*, 556 U.S. 502, 513 (2009) (citing 5 U.S.C. § 706(2)(A)).  The requirement that

agency action not be arbitrary and capricious includes an obligation that the agency "articulate a

satisfactory explanation for its action."  *Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State*

*Farm Mut. Automobile Ins. Co.*, 463 U.S. 29, 43 (1983).  Moreover, the agency must take

appropriate steps to explain its actions in a manner "that will enable the court to evaluate the

agency's rationale" at the time of its decision.  *Pension Benefit Guar. Corp. v. LTV Corp.*, 496

U.S. 633, 654 (1990).

9.      Three well-established canons of statutory construction also support the Court's

assertion of subject matter jurisdiction.  *See Kucana v. Holder*, 558 U.S. 233, 251 (2010) (noting

that "executive determinations generally are subject to judicial review").  First, congressional

intent to limit a court's jurisdiction must be "clear and convincing" in order to preclude judicial

review.  *Reno v. Catholic Social Services, Inc.*, 509 U.S. 43, 63-64 (1993); *Bd. of Governors of*

*the Fed. Reserve Sys. v. MCorp. Fin., Inc.*, 502 U.S. 32, 44 (1991).  Second, there is a "strong

presumption" in favor of judicial review of administrative acts.  *INS v. St. Cyr*, 533 U.S. 289, 298

(2001); *Kucana*, 558 U.S. at 241.  Third, as a general rule, courts resolve ambiguities in

immigration laws in favor of the alien.  *INS v. Cardoza-Fonseca*, 480 U.S. 421, 449 (1987).

These principles support the Court's assertion of subject matter jurisdiction to review Ms. Reyes's claims.

10.     Section 242 of the INA, 8 U.S.C. § 1252, does not deprive this Court of jurisdiction.  8 U.S.C. § 1252(a)(5) provides that "a petition for review filed with an appropriate court of appeals in accordance with this section, shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this Act[.]"  As the present action is not an action to review a removal order but an action challenging a decision by the Defendant USCIS to deny a petition for U-3 nonimmigrant status, which denial was arbitrary, capricious, and contrary to law and settled practice, this Court retains original jurisdiction under the APA and 28 U.S.C. § 1331, as well as for declaratory relief under 28 U.S.C. § 2201.

11.     8 U.S.C. § 1252(a)(2)(B) provides that no court shall have jurisdiction to review either (i) "any judgment regarding the granting of" various forms of relief from removal, or (ii) "any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified … to be in the discretion of the Attorney General or the Secretary of Homeland Security[.]"  Because denial of a Form I-918 Supplement A Petition for Qualifying Family Member of a U-1 Recipient is neither a judgment regarding the granting of relief from removal nor a decision or action that is specified to be in the discretion of the Attorney General or the Secretary of Homeland Security, the Court retains original jurisdiction over this claim.  *See* 8 U.S.C. § 1101(a)(15)(U)(ii); 8 C.F.R. § 214.14(f); *see also Kucana*, 558 U.S. at 244-251.

12.     Furthermore, 8 U.S.C. § 1252(a)(2)(B)(ii) does not divest the Court of jurisdiction to review USCIS's denial of Ms. Reyes's Derivative U Petition. *See Nat'l Collegiate Rec. Servs. V. Chertoff*, 447 F.Supp.2d 527 (D.S.C. 2006) ("[B]ecause neither the relevant Subchapter of the INA, nor the Regulations passed pursuant to the INA, specify that the Attorney General's decision to approve [the nonimmigrant visa application at issue] is "in his discretion," section 1252(a)(2)(B)(ii) does not bar this court from reviewing the Government's denial.").  As the Supreme Court has declared, in enacting 8 U.S.C. § 1252(a)(2)(B)(ii) "Congress had in mind … those [agency decisions] made discretionary by legislation." *Kucana*, 558 U.S. at 246-47. Consequently, the jurisdiction-stripping provision only applies to the "narrower category of decisions where Congress has taken the additional step to *specify* that the sole authority for the action is in the Attorney General's discretion." *Alaka v. Attorney Gen. of U.S.*, 456 F.3d 88, 95 (3d Cir. 2006) (emphasis added).  Absent "clear and convincing evidence" of congressional intent specifically to eliminate review of certain administrative actions, the above-cited principles of statutory construction support a narrow reading of the jurisdiction-stripping language at 8 U.S.C. § 1252(a)(2)(B)(ii).  *Kucana*, 558 U.S. at 252; *see also Obioha v. Gonzales*, 431 F.3d 400, 405 (4th Cir. 2005) (holding that 8 U.S.C. § 1252(a)(2)(B)(ii) should be interpreted narrowly where the narrower interpretation is as likely as the broader interpretation).

13.     The statutory provision authorizing USCIS to grant or deny Derivative U Petitions nowhere specifies that the agency's decision is "in the discretion" of the Secretary of Homeland Security.  *Compare, e.g.*, 8 U.S.C. § 1101(a)(15)(U) *with* 8 U.S.C. § 1255(a) ("The status of an alien who was inspected and admitted or paroled into the United States … may be adjusted by the Attorney General, *in his discretion* … to that of an alien lawfully admitted for

permanent residence[.]") (emphasis added).  Had Congress intended to strip the courts of authority to review inherently – as opposed to specifically – discretionary decisions by the agency regarding immigration matters, it could have clearly indicated its intent.  *See Kucana*, 558 U.S. at 248; *McNary v. Haitian Refugee Center*, 498 U.S. 479, 494 (1991).  Here, unlike in the adjustment of status context, Congress did not do so.  Without such a clear statement of intent, the Court should not find that Congress meant to divest the federal judiciary of such fundamental power.  In addition, USCIS has adopted regulations and practices – discussed in Section V – that guide its adjudication of Derivative U Petitions, and which provide the Court the necessary standard for judicial review of the agency's action under the APA.  *See, e.g.*, *M.B. v. Quarantillo*, 301 F.3d 109, 113 (3d Cir. 2002) (finding that regulations governing adjudication of certain visa petitions, coupled with agency field guidance, provided sufficient guidance for judicial review of agency action).

      **B.**    **Standing**

      14.    Because Ms. Reyes has suffered an injury in fact – the erroneous denial of her Derivative U Petition and consequent inability to be reunited with her daughter – Ms. Reyes has standing to complain.  *See, e.g., Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (holding that standing requires a plaintiff to show (1) an injury in fact, (2) a causal connection between the injury and the complained-of conduct, and (3) a likelihood that the injury will be redressed by a favorable decision). Ms. Reyes has standing as she has "'alleged such a personal stake in the outcome of the controversy' as to warrant [her] invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on [its] behalf."  *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)).  A

favorable decision by this Court – remanding this matter to the agency with instructions to equitably toll the filing deadline for Ms. Reyes's Derivative U Petition – would grant Plaintiff the relief that she seeks. *See Wilderness Society v. Norton*, 434 F.3d 584, 590 (D.C. Cir. 2006) ("The redressability inquiry poses a simple question:  If plaintiff[] secured the relief [she] sought … would it redress [her] injury?").

### C.     Finality and Ripeness

15.     The Administrative Appeals Office decision denying Plaintiff's Derivative U Petition constitutes "final agency action" for purposes of APA review. *See* 5 U.S.C. § 704.  The decision "mark[s] the consummation of the agency's decisionmaking process" and is an action "by which rights or obligations have been determined or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997).  Thus, this case is ripe for review because no administrative appeal of the USCIS decisions is pending.

16.     Likewise, the USCIS denial of Ms. Reyes's Derivative U Petition is ripe for review by this Court.  Determining ripeness of administrative action for judicial review demands an evaluation of (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration. *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003).  Ms. Reyes's claims are fit for judicial decision because the dispute presents legal questions and there is a "concrete dispute" between the parties. *Id.* at 812. Furthermore, Ms. Reyes will continue to suffer significant hardship if no court reviews the agency denial.

17.     The erroneous denial by USCIS of Ms. Reyes's Derivative U Petition, and her consequent inability to reunite with her daughter, has resulted in substantial emotional difficulty

and sorrow for Ms. Reyes.  There is "no other adequate remedy in a court" for Ms. Reyes's

claims.  5 U.S.C. § 704.  Moreover, there is no further opportunity to submit a new Derivative U

Petition to USCIS because the material facts – Plaintiff's daughter's age on the date Plaintiff's U

visa petition was filed – would remain the same, locked by operation of law. *See* 8 U.S.C. §

1184(p)(7)(A).

### III.  VENUE

18.     Venue is proper in the District of Columbia under 28 U.S.C. § 1391(e), because

this is an action in which no real property is involved, against officers and agencies of the United

States in their official capacities, brought in the district where multiple defendants reside and

where a substantial part of the events or omissions giving rise to the claim occurred. Here, the

AAO decision Ms. Reyes complains of was decided at the AAO, which is located in the District

of Columbia.

### IV.  PARTIES

19.     Plaintiff, PATRICIA REYES-PINEDO, is a Peruvian national. Ms. Reyes was the

victim of domestic violence that occurred in Fairfax County, Virginia. She cooperated with law

enforcement. Based on the foregoing, on December 29, 2011 Ms. Reyes applied for and

ultimately received a U visa from Defendant, USCIS. Ms. Reyes has three children. The two

younger children reside with Ms. Reyes in Virginia. The oldest child, Geraldine Aquino Reyes,

resides in Peru. Geraldine was born on April 19, 1990.

20.     The Defendants, LEON RODRIGUEZ, Director, U.S. Citizenship and

Immigration Services ("USCIS"); JEH CHARLES JOHNSON, Secretary, U.S. Department of

Homeland Security ("DHS"); RON ROSENBERG, Chief, Administrative Appeals Office,

USCIS; and LAURA B. ZUCHOWSKI, Director, Vermont Service Center, USCIS, are charged

by law with the statutory and regulatory obligation to determine eligibility for Form I-918

Supplement A Petition for Qualifying Family Member of a U-1 Recipient, pursuant to 8 U.S.C. §

1101(a)(15)(U) and 8 C.F.R. § 214.14(f).

## V.  STATEMENT OF FACTS

21.     The U nonimmigrant status (U visa) is set aside for victims of certain crimes who

have suffered mental or physical abuse and are helpful to law enforcement or government

officials in the investigation or prosecution of criminal activity. Congress created the U

nonimmigrant visa with the passage of the Victims of Trafficking and Violence Protection Act

(including the Battered Immigrant Women's Protection Act) in October 2000. Div. A of Pub. L.

106-386 § 1513(a)(2), 114 Stat. 1464, 1533-34 (Oct. 28, 2000). The legislation was intended to

strengthen the ability of law enforcement agencies to investigate and prosecute cases of domestic

violence, sexual assault, trafficking of aliens and other crimes, while also protecting victims of

crimes who have suffered substantial mental or physical abuse due to the crime and are willing to

help law enforcement authorities in the investigation or prosecution of the criminal activity. *Id.*

The legislation also helps law enforcement agencies to better serve victims of crimes. *Id.*

22.     A noncitizen is eligible for U-1 nonimmigrant status if he or she demonstrates all

of the following: (1) the noncitizen has suffered substantial physical or mental abuse as a result

of having been a victim of qualifying criminal activity; (2) the noncitizen possesses credible and

reliable information establishing that he or she has knowledge of the detail concerning the

relevant qualifying criminal activity; (3) the noncitizen has been helpful, is being helpful, or is

likely to be helpful to a certifying law enforcement agency in the investigation or prosecution of

the relevant qualifying criminal activity and has not refused to cooperate; and (4) the qualifying

criminal activity occurred in the United States. 8 C.F.R. § 214.14(b). Qualifying criminal activity

includes rape, torture, trafficking, incest, domestic violence, sexual assault, abusive sexual

contact, and other crimes. 8 C.F.R. § 214.14(a)(9). A noncitizen requests U-1 nonimmigrant

status by filing Form I-918 with USCIS's Vermont Service Center. 8 C.F.R. § 214.14(c)(1);

USCIS, Instructions for Form I-918, Petition for U Nonimmigrant Status at 8 (Jan. 15, 2013),

*available at* http://www.uscis.gov/sites/default/files/files/form/i-918instr.pdf. U nonimmigrant

status may be approved for a period not to exceed 4 years. 8 C.F.R. § 214.14(g). U

nonimmigrants may become lawful permanent residents after three years of continuous residence

following the date of admission as a U nonimmigrant. 8 U.S.C. § 1255(m).

     23.     "Qualifying family members" of U-1 nonimmigrants may receive derivative U

nonimmigrant status. 8 C.F.R. § 214.14(f). Qualifying family members include, in the case of U-

1 nonimmigrants over the age of 21, the spouse or children of such nonimmigrants. U.S.C. §

1101(a)(15)(U)(ii)(II); 8 C.F.R. § 214.14(a)(10). The visa classification for a "child" of a person

with U-1 nonimmigrant status is U-3 status. 8 C.F.R. § 214.14(f)(1). In the INA, the term "child"

is limited to unmarried persons under the age of 21. 8 U.S.C. § 1101(b)(1).

     24.     Both USCIS and Congress have taken steps to preserve eligibility for derivative U

status for the sons and daughters of U nonimmigrants who turn 21 while the derivative or

principal petition is pending. Under regulations promulgated in 2007, in order to be considered a

qualifying family member, the relationship between the principal petitioner and the family

member needed to exist not only at the time Form I-918 was filed, but also at the time the

petition for derivative status was adjudicated, and at the time of the qualifying family member's

subsequent admission to the United States. 8 C.F.R. § 214.14(f)(4) (2007). Due to unforeseen

delays, some qualifying children aged-out of derivative eligibility while their petitions for

derivative U nonimmigrant status were pending. *See* USCIS Policy Memo 602-0102, *Violence*

*Against Women Reauthorization Act of 2013: Changes to U Nonimmigrant Status and*

*Adjustment of Status Provisions*, at 3-5 (June 15, 2014) (describing history of "age-out"

problems as well as agency and congressional efforts to remediate). This was undesirable from a

policy perspective: allowing these immigrants to obtain or maintain lawful status is "important to

preserve family unity, which ultimately benefits law enforcement because the principal U

nonimmigrant will be more likely to continue to cooperate knowing his or her family member is

in status." USCIS Policy Memo 602-0077, *Age-Out Protection for Derivative U Nonimmigrant*

*Status Holders: Pending Petitions, Initial Approvals, and Extensions of Status*, at 2 (October 24,

2012). To address this "age-out" problem, USCIS first adopted an informal policy of holding

cases of children who aged out while their derivative petitions were pending. *Id*. Then, USCIS

began a process of reviewing for deferred action the cases of those individuals who had

submitted prima facie evidence of their derivative U nonimmigrant status but had aged-out while

the petition was pending.[1] *Id*. Next, Congress responded to the problem by passing the Violence

Against Women Reauthorization Act of 2013 (VAWA 2013), Pub. L. 113-4 (March 7, 2013),

which added Section 214(p)(7)(A) to the INA, which provides,

       (7) AGE DETERMINATIONS.—

---

[1] Deferred action is an act of administrative convenience to give some cases lower priority for
removal and does not constitute an immigration status. While deferred action is not an
immigration status, an individual may request and be granted employment authorization if
deferred action has been provided in his or her case.

> (A) CHILDREN.—An unmarried alien who seeks to accompany, or
> follow to join, a parent granted status under section 101(a)(15)(U)(i), and
> who was under 21 years of age on the date on which such parent
> petitioned for such status, shall continue to be classified as a child for
> purposes of section 101(a)(15)(U)(ii), if the alien attains 21 years of age
> after such parent's petition was filed but while it was pending.

Thus, under the new statutory regime, an unmarried qualifying family member "child" under 21 years of age who has a derivative petition properly filed for him or her by the principal will continue to be considered a "child" throughout the adjudication process, even if the qualifying family member turns 21 years of age while the principal or derivative petition is pending. INA § 214(p)(7)(A). Congress made this provision retroactive. VAWA 2013 § 805(b).

25.     In January 2011, at the suggestion of the police whom she had assisted, Ms. Reyes contacted the Tahirih Justice Center to discuss the possibility of applying for a U visa. Ms. Reyes was told her that her children, including Geraldine – then 20 years old – would be able to obtain a visa and enter the United States from Peru.

26.     In February 2011, Tahirih informed Ms. Reyes that the firm White & Case would assist her on a pro bono basis. On April 13, 2011 – 6 days prior to Geraldine's 21st birthday – Ms. Reyes went to White & Case to sign her declaration and Form I-918. Ms. Reyes believed her application would be filed that day or immediately thereafter.

27.     On April 18, 2011 pro bono counsel mailed to the USCIS Vermont Service Center Ms. Reyes's completed application, which included not only Ms. Reyes's own Form I-918 but also the Derivative U Petition she filed for Geraldine. USCIS accepted the package on April 19, 2011, the day Geraldine turned 21.

28.     On September 12, 2012, the Vermont Service Center denied Ms. Reyes's Derivative U Petition filed on behalf of Geraldine because Geraldine "does not meet the requirements for qualifying family member."

29.     Ms. Reyes timely filed Form I-290B, Notice of Appeal or Motion, with the USCIS Administrative Appeals Office. In Ms. Reyes's Motion to Reopen / Appeal, she argued, *inter alia*, that USCIS erred by declining to equitably toll the filing deadline for Geraldine "due to the ameliorative nature of the U visa, ineffective assistance of counsel, and the equities involved." Ms. Reyes discussed equitable tolling law in a variety of immigration settings. Ms. Reyes explained how she had complied with *Matter of Lozada*, 19 I&N Dec. 637 (BIA 1988), a Board of Immigration Appeals decision setting forth the procedural requirements a noncitizen must meet to reopen an immigration case based upon a claim of ineffective assistance of counsel. Ms. Reyes's Motion to Reopen / Appeal also included an affidavit from pro bono counsel in which counsel acknowledged that they "erred in not sending the completed application to USCIS at least one day earlier."

30.     On November 24, 2014, the AAO denied Ms. Reyes's appeal. The AAO recognized that Ms. Reyes established that ineffective assistance of counsel prevented the Principal U Petition and the Derivative U Petition from being filed with USCIS prior to Geraldine's 21st birthday. However, the AAO further stated that Ms. Reyes had "not demonstrated that section 214(p) of the Act is a statute of limitations subject to equitable tolling. The cases cited by counsel as examples where equitable tolling filing deadlines have been applied do not involve U visas."

31.     Unless USCIS approves Ms. Reyes's Derivative U Petition for Geraldine, Ms. Reyes will be separated from her daughter Geraldine for many more years. If Ms. Reyes acquires lawful permanent resident (LPR) status, she could file an immigrant visa petition for Geraldine under INA § 203(a)(2)(B) as the LPR parent of an unmarried son or daughter over 21 years of age. However, that visa preference category has a substantial backlog: as of this month, only those petitions filed on or before December 22, 2008 were being processed. *See* U.S. Department of State, Visa Bulletin for September 2015, *available at* http://travel.state.gov/content/visas/english/law-and-policy/bulletin/2015/visa-bulletin-for-september-2015.html.  If Ms. Reyes naturalizes — which she will not be eligible to do until five years after she acquires LPR status — she could file a petition for Geraldine as the U.S. citizen mother of an unmarried son or daughter over 21 years of age. INA § 203(a)(1). But that petition would enter an even longer line: As of this month, only those petitions filed on or before December 15, 2007 were being processed. *Id.*

## VI.  CAUSE OF ACTION

**A. USCIS's failure to equitably toll the filing deadline for Ms. Reyes's Derivative U Petition — where it is undisputed that ineffective assistance of counsel precluded Ms. Reyes from meeting the deadline — was arbitrary, capricious, an abuse of discretion, and contrary to law.**

32.     Plantiff re-alleges and incorporates by reference, as if fully set forth herein, the allegations in paragraphs 1-31 above.

33.     Defendants' failure to equitably toll the filing deadline for Ms. Reyes's Derivative U Petition violated the Administrative Procedures Act because it was arbitrary, capricious, an

16

abuse of discretion, and contrary to law. It is undisputed that ineffective assistance of counsel precluded Ms. Reyes from meeting the deadline.

34.     Equitable tolling applies to the filing deadline for Ms. Reyes's Derivative U Petition. In *Henderson v. Shinseki*, the Supreme Court explained that timing rules that are not jurisdictional but, rather "seek to promote the orderly process," should be applied liberally.  131 S.Ct. 1197 (2011).  Absent some evidence that "Congress opted to forbid equitable tolling[,]" the law presumes the doctrine's availability. *U.S. v. Kwai Fun Wong*, 575 U.S. __, 135 S. Ct. 1625, 1633 (2015); *see also Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 95 (1990); *Bowen v. City of New York*, 476 U.S. 467, 479-480 (1986); *Honda v. Clark*, 386 U.S. 484, 501 (1967). Here, Congress did nothing to forbid equitable tolling. In fact, Congress and the agency have taken substantial steps to *prevent* the very hardship Plaintiff is currently facing. In light of the agency's "holding" policy followed by their deferred action policy, and Congress' enactment of U visa derivative age-out protections in VAWA 2013, adopting equitable tolling here would be consonant with Congressional and agency intent. *See supra* ¶ 24. To the extent that doubts linger as to the availability of tolling, the "long-standing principle of construing any lingering ambiguities … in favor of the alien" necessitates application of the liberalized approach of *Shinseki. INS v. Cardozo-Fonseca*, 480 U.S. 421, 449 (1987).

35.     Equitable tolling of filing deadlines has been applied in a variety of immigration settings.   For example, in *Iturribarria v. INS*, 321 F.3d 889 (9th Cir. 2003), the court equitably tolled the 90 day motion to reopen removal proceedings deadline for a motion filed 91 days after the entry of a removal order where the motion was late due to ineffective assistance of counsel. In *Moreno-Gutierrez v. Napolitano*, 794 F. Supp. 2d 1207 (D. Col. 2011), the Court held that the

two year period for certain VAWA petitioners was subject to equitable tolling. *See also Luna v. Holder,* 637 F.3d 85 (2d. Cir. 2011); *Mezo v. Holder*, 615 F.3d  616 (6th Cir. 2010); *Gaberov v. Mukasey*, 516 F.3d 590 (7th Cir. 2008).

36.     Equitable tolling is justified in Ms. Reyes's case. Equitable tolling is appropriate where an otherwise time-barred petitioner has been pursuing his or her rights diligently, and some extraordinary circumstance stood in his or her way and prevented timely filing. *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). The "test for equitable tolling is … whether the claimant could reasonably have been expected to have filed earlier[.]" *Gaberov v. Mukasey*, 516 F.3d 590, 594 (7th Cir. 2008).   Here, Ms. Reyes provided pro bono counsel with all items necessary to complete the Derivative U Petition. She notified counsel of the importance to her of being reunited with her daughter, Geraldine. Ms. Reyes could not have foreseen that pro bono counsel would fail, inexplicably, to mail the U visa application until the day before Geraldine turned 21, which meant that the application was not received until but a few hours too late. This clear instance of ineffective assistance of counsel qualifies as an extraordinary circumstance justifying equitable tolling. *Cf. Iturribarria v. INS*, 321 F.3d 889 (9th Cir. 2003); *Siong v. INS*, 376 F.3d 1030, 1037 (9th Cir. 2004) ("Failing to file a timely notice of appeal is obvious ineffective assistance of counsel ….").

37.     Ms. Reyes complied with the requirements set forth in *Matter of Lozada*, 19 I&N Dec. 637 (BIA 1988), which govern when a noncitizen may present a motion to reopen based on ineffective assistance of counsel.

**B. USCIS did not provide a reasoned explanation for declining to equitably toll the filing deadline for Plaintiff's Derivative U Petition**

38.     Plantiff re-alleges and incorporates by reference, as if fully set forth herein, the allegations in paragraphs 1-37 above.

39.     In *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947), the Supreme Court emphasized a "simple but fundamental rule of administrative law," that an agency must set forth clearly the grounds on which it has acted.  Here, Defendants have broken "the general rule requiring that the agency explain the policies underlying its action."  *Atchison v. Wichita Bd. of Trade*, 412 U.S. 800, 807 (1973).

40.     The AAO's decision did not furnish a reasoned explanation for declining to equitably toll the filing deadline for Ms. Reyes's Derivative U Petition. The AAO decision asserts that Ms. Reyes "had not demonstrated that section 214(p) of the Act is a statute of limitations subject to equitable tolling. The cases cited by counsel as examples where equitable tolling filing deadlines have been applied do not involve U petitions." The first sentence is conclusory and the second, while factually accurate, is irrelevant and did not resolve the question before the tribunal. The issue before the AAO was not whether equitable tolling has been applied to U petitions in the past, but rather, whether the law of equitable tolling counsels in favor of applying equitable tolling to this situation. The AAO's logic would effectively prohibit any extensions of legal doctrine to new factual circumstances. Legal reasoning, which often takes the form of analogical reasoning, requires a comparison of the fact situation before the court with the fact situations of previously decided cases to determine whether they are sufficiently similar such

that the previously decided cases should control the outcome of the case before the court. The

AAO did not adhere to this elementary rule governing judicial decision making.

### VII.    PRAYER FOR RELIEF

WHEREFORE, Ms. Reyes prays that this Court:

    A.  Declare unlawful and set aside Defendant USCIS's decision to deny Ms.

        Reyes's Derivative U Petition;

    B.  Remand Plaintiff's case to USCIS with instructions to equitably toll the filing

        deadline by one day for Ms. Reyes's Derivative U Petition.

    C.  Grant such other and further relief as this Court deems proper.


Respectfully submitted this 21st day of September 2015.


_____/s/_____*Jennifer Drugay Cook*_____

Jennifer Drugay Cook
D.C. Bar No. 478608
BENACH RAGLAND LLP
1333 H Street, NW – Suite 900 West
Washington, DC  20005
Tel: (202) 644-8600
Fax: (202) 644-8615
Jdcook@benachragland.com

*Counsel for Plaintiff*